## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                  Chapter 11

BOARDWALK AND BASEBALL, INC.,             Case No. 14-bk-00317-MGW
COLERIDGE CORPORATION,                    Case No. 14-bk-00318-MGW
BOARDWALK LAND DEVELOPMENT, INC.,         Case No. 14-bk-00319-MGW

                                                         *Jointly Administered Under*
_____Debtors._____/     *Case No. 8:14-bk-317-MGW*

### ORDER GRANTING JOINT MOTION FOR AUTHORITY
### TO (I) ESTABLISH SALE PROCEDURES, (II) SET A
### HEARING DATE ON SALE, (III) APPROVE FORM OF
### NOTICE AND SHORTENED NOTICE IN CONNECTION
### WITH CONSENSUAL PLAN OF REORGANIZATION AND
### (IV) APPROVE AND CODIFY SETTLEMENT TERMS [DOC. NO. 79]

THIS MATTER came before the Court on May 1, 2014, upon the joint motion of **BOARDWALK AND BASEBALL, INC., COLERIDGE CORPORATION, BOARDWALK LAND DEVELOPMENT, INC.** (collectively, the "**Debtors**"), **CITY CENTER COMMUNITY DEVELOPMENT DISTRICT**, a local unit of special purpose government (the "**District**"), **U.S. BANK NATIONAL ASSOCIATION**, solely as indenture trustee (the "**Indenture Trustee**"), and **CITY CENTER BONDS, LLC,** (the "**Bondholder**")[1] (collectively, the Debtors, the District, the Indenture Trustee and the Bondholder are referred to as the "**Co-Plan Proponents**"), seeking the entry of an order as follows:

> (i)     approving a Stalking Horse Bid and the Purchase and Sale Agreement ("**PSA**") attached as Exhibit "A" to the Sale Motion (as defined below);

> (ii)    approving the Bid Procedures set forth herein (as defined below);

> (iii)   establishing certain hearing dates and times and notice periods relative to the Sale (as defined below) proposed herein;

> (iv)    establishing a date for the Auction (as defined below) of the Property (as defined below), if necessary;

---

[1] The Bondholder is the owner of 100% of all outstanding 2005A Bonds and 2007A Bonds (as defined in the Sale Motion).

      (v)      approving the form of the Sale Notice (as defined below);

      (vi)      approving and/or ordering any other process or procedure necessary to effect the relief sought herein; and

      (vii)      approving and codifying the settlement agreement by and between certain of the Co-Plan Proponents and certain third parties, including but not limited to, Brenda Nestor, individually and the probate estate of Victor Posner (collectively the "**Settlement Parties**").

[Doc. No. 79] (the "**Sale Motion**").  The Court, having reviewed the Sale Motion, having considered the arguments of counsel, and it appearing that  good and sufficient notice of the Sale Motion has been given (and to the extent notice has not been timely given, adequate opportunity for review and objection is provided for herein); the Court having concluded that there is good and sufficient cause in support of granting the relief requested in the Sale Motion and the entry of this order, and that such relief is in the best interest of the Debtors' estates, creditors and all parties in interest, and that such relief will not unduly prejudice any other parties-in-interest in this Chapter 11 case; and there being no objection raised, and the Court being otherwise fully advised in the premises, **FINDS AND DETERMINES THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over this matter and the parties and property affected thereby pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Unless otherwise provided, all capitalized terms herein shall be given their respective meanings as defined in the Sale Motion.

C.      The statutory predicates for the relief sought in the Sale Motion are sections 105, 363, 1107, 1108 and 1123 of the Bankruptcy Code, as supplemented by Federal Rules of Bankruptcy Procedure 2002, 4001, 6004, 6006, 9019 and Local Bankruptcy Rules for the Middle District of Florida 2002, 6004-1 and 9019-1.

D.      The Court has jurisdiction over this matter and over the property of the Debtors and the Debtors' estates pursuant to 28 U.S.C. §§ 157 and 1334.

E.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(A), (N), and (O).

F.      The relief requested in the Sale Motion is in the best interests of the Debtors, the Debtors' estates, the Creditors, and other parties-in-interest.

G.      The notices given for the Sale Motion and the hearing are due and sufficient.

H.      Good and sufficient reasons and cause have been articulated for approving (i) the bidding procedures as set forth herein (the "**Bidding Procedures**"), (ii) the certain bid protections as provided in the Agreement for Purchase and Sale of Property attached to the Sale Motion as Exhibit "A" [Doc. No. 79] (the "**PSA**"), (iii) the manner of notice of the Sale Motion and the final hearing to consider the approval of the sale (the "**Sale Hearing**"), (iv) the proposed assumption and assignment of executory contracts and leases, including any of the cure amounts, and (v) the scheduling of the Sale Hearing.

I.      The Co-Plan Proponents have articulated good and sufficient reasons for this Court to grant the relief requested in the Sale Motion regarding the sales process, including the Court's (i) approval of the Bid Procedures, (ii) approval of the Stalking Horse Bid, and (iii) approval of the Sale Notice.

J.      The Co-Plan Proponents have articulated good and sufficient reasons for, and the best interests of the Debtors' Estates will be served by this Court scheduling an Auction and Final Sale Hearing to consider whether to grant the remainder of the relief sought in the Sale Motion, including approval of the Sale pursuant to the Stalking Horse Bid or any other Successful Bid free and clear of claims, liens, interests and encumbrances, except as otherwise set forth in the Sale Motion, with same to attach to the proceeds of Sale.

K.      This Order is effective upon entry, however, the relief sought herein shall be subject to the entry of an order confirming the Plan of Reorganization to be filed by the Co-Plan Proponents (the "**Plan**"), incorporating, *inter alia*, the terms of the Sale Motion, subject to the rights of the District or other Successful Bidder to waive the protections of 11 U.SC. § 1146(a) under the conditions set forth in Paragraph 42 of the Sale Motion.

L.      The Co-Plan Proponents have demonstrated good and sufficient reasons and cause and satisfactorily established that the factors enumerated in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir.), *cert. denied*, 498 U.S. 959 (1990) are satisfied with respect to the settlement agreement set forth in the Sale Motion

### NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.      The Sale Motion is **GRANTED**.

2.      The Auction process set forth in the Sale Motion is **APPROVED**.  The Co-Plan Proponents shall the Property through an auction to the highest and best bidder subject to the terms and conditions provided herein (the "**Auction**").  The Debtors' Estates shall sell the Property, in one lot, to the Successful Bidder (as defined below) at the Auction, if necessary. There shall only be an Auction if there is at least one Qualified Bid (as defined below) in addition to the Stalking Horse Bid.  In the event there is no Qualified Bid other than the Stalking Horse Bid, the Co-Plan Proponents shall seek the immediate entry of the Final Sale Order approving the Stalking Horse Bid as the Successful Bid and approving the District or its designee as the Successful Bidder.  To the extent possible, the Final Hearing and Confirmation Hearing on the Consensual Plan shall be scheduled at the same time.

3.      The District's "Stalking Horse Bid" in the amount of $25 million as a non-cash credit bid to which Cure Costs (as defined below), if any, will be added is **APPROVED**.  At the Auction, if an Auction is necessary (as defined below), the District shall be entitled to credit bid up to an agreed amount of the District's Secured Claim (the "**Maximum Credit Bid**").  If the District is the Successful Bidder, the full amount of any credit bid by the District shall be applied dollar for dollar, toward a reduction of the District Claims.  If the District is not the Successful

Bidder, then the District and the Debtors shall share the proceeds of the Sale from the Successful Bidder at Closing as set forth on Schedule 1 to the Sale Motion, not to exceed the Secured District Claims. The Sale shall not occur prior to the entry of an order confirming the Plan, unless such condition is waived the by the District and the District Designee in their sole discretion. A Successful Bidder who is not the District must complete a purchase and sale agreement that contains the same terms and conditions as the PSA and is in substantially the same form as the PSA. All costs of Sale shall be payable as provided in Schedule 1 to the Sale Motion. The Successful Bidder shall be responsible for and/or take subject to the full payment of all current and past due *ad valorem* real estate taxes and the outstanding O&M Assessments due the District by the Debtors, which total approximately $1.2 million.

4.     The Sale shall consist of the Debtors' right, title and interest in those certain real properties, being more particularly described on **Composite Exhibit "A"** (the "**Real Property**"), which term is used to and includes all improvements (the "**Improvements**") owned by the Debtors and/or located upon the Real Property, and such Debtors' interest, if any, in and to (i) all strips and gores of land lying adjacent to the property, lands underlying any adjacent streets or roads, easements, privileges, rights-of-way, riparian and other water rights, and other appurtenances pertaining to or accruing to the benefit of the Real Property; (ii) all fixtures currently located on the Real Property (the "**Personal Property**"); (iii) all licenses, permits, contract rights, development rights, entitlements and approvals pertaining to the ownership, operation and/or proposed development of the Real Property, including, but not limited to, the existing development rights, governmental approvals, density rights, licenses, contract rights, impact fee credits, permits, licenses, development orders and building permits, including without limitation any rights with respect to the Development Order for Circus World, a Development of Regional Impact, DRI 86-1, recorded in Official Records Book 2505, Page 1630, of the Public Records of Polk County, as amended from time-to-time, and the terms and conditions of that Development Agreement for Victor Posner City Center DRI – PHASE 1 recorded May 22, 2006 in Official Records Book 6787, Page 503, as affected by Restated, Amended & Updated

Development Agreement for Victor Posner City Center DRI – PHASE 1 recorded November 16, 2006 in Official Records Book 7059, Page 1074, and Restated, Amended, Updated Development Agreement for Victor Posner City Center Development of Regional Impact recorded January 27, 2010 in Official Records Book 8063, Page 1200, and Restated, Amended, and Updated Development Agreement for Victor Posner City Center Development of Regional Impact recorded August 13, 2013 in Official Records Book 9032, Page 2036, of the Public Records of Polk County, Florida (collectively, the "**DRI Rights**"); and (iv) all of Debtors' general intangible rights pertaining to ownership and proposed development of the Real Property (all of Debtors' interest in the Real Property, Improvements, the Personal Property and all other property and rights described in this paragraph are collectively referred to as the "**Property**[2]").  However, specifically excluded from this order are certain assets which consist of all cash of the Debtors, causes of action arising under chapter 5 of the Bankruptcy Code, the Debtors' interests in Posner Park Retail, LLP, and other assets not set forth in the Sale Motion (the "**Retained Assets**").  For the avoidance of doubt, the Slander of Title Action shall be dismissed with prejudice by the Debtors at the Closing and the Debtors represent that such claim has not been sold, transferred, assigned nor maintained, upon the Closing of the Sale.

5.      The Property is subject to a valid, first priority lien in favor of the District (of equal dignity with *ad valorem* tax assessments and O&M Assessments).  The Sale shall reduce the amount of the Secured District Bond Claim by the amount of the purchase price (including the amount of any credit bid) approved by the Final Sale Order.  Upon Closing, all District Claims shall be deemed satisfied only *vis a vis* the Debtors, their affiliates, and the Retained Assets, subject to the reservations contained in the Sale Motion. The Sale shall not cause a merger of title to the Property in any fashion.  If the Property is sold to the District, the Property shall be conveyed to the District's Designee without waiving, and subject to any rights to enforce or cause the enforcement of or the collection of any special assessments and liens not satisfied by

---

[2] The Property is owned by Boardwalk and Baseball, Inc. and Coleridge Corporation.

the proceeds of the Sale, as well as any and all future installments of the City Center Bond Assessments securing the Bonds, including but not limited to all future principal amounts, interest, penalties or other amounts arising from any future payments due on the City Center Bond Assessments.  If the Property is sold to a person or entity other than the District, then the District shall receive the proceeds of Sale to which it is entitled hereunder in satisfaction of the District Claims.  THE DISTRICT SHALL PROMPTLY TURN OVER SUCH PROCEEDS TO THE INDENTURE TRUSTEE FOR THE BENEFIT OF THE BONDHOLDER, SUBJECT TO THE BONDHOLDER AND THE DISTRICT ENTERING INTO AN AGREEMENT WHICH PROVIDES FOR THE PAYMENT OF THE COSTS INCURRED BY THE DISTRICT IN CONNECTION WITH THE SALE MOTION AND THE PAYMENT OF ALL OBLIGATIONS OF THE DISTRICT WHICH HAVE ACCRUED AS OF THE DATE OF THE TRANSFER OF TITLE.  Notwithstanding anything in the Sale Motion to the contrary, upon the closing of the Sale (either to the District Designee or third party Successful Bidder) in accordance with this Order, all District Claims shall be deemed satisfied only *vis a vis* the Debtors, their affiliates, and the Retained Assets, except as otherwise specifically set forth herein.

6.     The Bid Procedures sought in the Sale Motion are **APPROVED** and are as follows:

a.     **Qualified Bids**.  To constitute a Qualified Bid, each bidder other than the District shall deliver to each of the respective counsel for the Co-Plan Proponents and counsel for the Debtors, in trust, no later than **5:00 p.m., eastern daylight time on August 4, 2014**:  (i) a signed purchase and sale contract, in form and content substantially similar to the PSA attached to the Sale Motion as Exhibit "A", with a redlined copy showing any changes, in an amount sufficient to comply with the Minimum Bid Requirements (defined below), without contingency of any kind; (ii) an earnest money deposit equal to $3,000,000 in cleared funds (a "**Deposit**"); and (iii) written evidence of financial ability to pay, free of any contingency, an amount equal to or in excess of the Minimum Bid Requirement (as defined below) (a "**Qualified Bid**").

A bid will not constitute a Qualified Bid if it is subject to a financing contingency.  The District shall be deemed a Qualified Bidder and is excused from having to comply with the provisions of this subparagraph (a).  The Co-Plan Proponents, subject to this Court's approval, shall have the sole discretion to determine whether a bid is a Qualified Bid (a "**Qualified Bidder**").  The Co-Plan Proponents shall consult with the Pension Benefit Guaranty Corporation concerning any determination as to whether a bid is a Qualified Bid; provided, however, that the determination as to whether a bid is a Qualified Bid shall be in the sole discretion of the Co-Plan Proponents, subject to the Court's approval.  The Co-Plan Proponents will notify parties three (3) business days prior to the Auction date whether any bid qualified as a Qualified Bid.

b.   **Minimum Bid Requirements**.   Any Qualified Bidder shall execute a purchase and sale agreement that is in substantially the same form as the PSA which shall include a cash purchase without contingency and including an initial bid of at least $25,250,000, plus the specific assumption of payment of outstanding real estate taxes and outstanding O&M Assessments as set forth in the PSA and any Cure Costs required to be paid (the "**Minimum Bid Amount**").  The Minimum Bid Amount represents an amount sufficient to satisfy the following:  (i) administrative costs of the Debtors' estates for professional fees and costs, including costs of sale; and (ii) the Cure Costs, if any.  Any subsequent Qualified Bids to be made over the Minimum Bid Amount shall be made in increments of at least $250,000 (collectively with the Minimum Bid Amount, the "**Minimum Bid Requirements**").  The Sale Notice to be sent pursuant to this order shall contain the Minimum Bid Amount and the Minimum Bid Requirements.

c.   **Earnest Money Deposit**.   The Deposit required shall be payable by cashier's or certified check, payable to "Arnstein & Lehr LLP as escrow agent" or by wire transfer of immediately available funds on or before **August 4, 2014 at 5:00 p.m. eastern daylight time**.  The Deposit, together with any interest accrued thereon, if any, will be applied as a credit against the purchase price paid by the Buyer (as defined

below). At the conclusion of the Sale and upon Court approval of the winning bid, all Deposits made by Qualified Bidders other than the Buyer will be promptly returned (without interest); **provided, however, that a third party Qualified Bidder who makes the second highest and best bid (the "Back-Up Bid") shall remain the back-up bidder (the "Back-Up Bidder") until closing of the Sale.  In the event the Back-Up Bid is the Successful Bid, the Sale to the Back-Up Bidder shall close pursuant to the Bid Procedures.  In the event of a Back-Up Bidder default, the District shall become the Back-up Bidder and close the Sale by credit bid in an amount equal to its last highest credit bid, but not to exceed the Maximum Credit Bid.  In the event the Successful Bidder and/or the Back-Up Bidder is unable to close the Sale, the Successful Bidder and/or Back-Up Bidder's Deposit shall be forfeited and distributed 50% to the Debtors and 50% to the Indenture Trustee for the benefit of the Bondholder.  The District shall then immediately Close the Sale.  This Court shall have exclusive jurisdiction to resolve any disputes over any such Deposit.**

       d.    **Ability of the District to Credit Bid**.  The District's Stalking Horse Bid shall be a credit bid pursuant to 11 U.S.C. § 363(k).  The District shall be entitled to credit bid up to the Maximum Credit Bid without complying with the Minimum Bid Requirements.  No other party shall be permitted to credit bid or shall be excused from the Bid Procedures or Minimum Bid Requirements. The Stalking Horse Bid is deemed accepted by the Debtors and all Co-Plan Proponents, subject to further court approval by way of the entry of the Final Sale Order.  The District shall be deemed a Qualified Bidder and is excused from having to comply with the provisions of subparagraph (a) above and shall be entitled to the protections of 11 U.S.C. § 363(m) if it is the Successful Bidder.

       e.    **Higher and Better Bids**. The Auction shall be conducted on **August 12, 2014 at 10:00 a.m. eastern daylight time** at the offices of Stichter Riedel Blain & Prosser, P.A, if, and only if, there is at least one Qualified Bidder who has met the requirements for a Qualified Bidder and been accepted as a Qualified Bidder.  At the

Auction, Qualified Bidders may submit bids equal to or greater than the Minimum Bid Requirement, in increments of at least $250,000.00, until the conclusion of the Auction. The entity that submits what the Co-Plan Proponents believe constitutes the highest and best offer shall constitute the "Successful Bidder."  The PBGC shall be invited to attend the Auction and shall be consulted with respect to the determination as to which Bidder shall constitute the Successful Bidder; provided, however, that the entity that submits what the Co-Plan Proponents believe constitutes the highest and best offer shall constitute the "Successful Bidder."  The bid of the Successful Bidder (the "**Successful Bid**") shall be presented to the Court for approval on the date and time set by this Court for the final hearing to approve the Sale.  If the Court approves the Successful Bid, the Successful Bidder shall become the "**Buyer**" and shall close on the Sale as provided herein and consistent with the Sale Motion. In the event there is no Qualified Bidder other than the District, the Co-Plan Proponents shall seek immediate entry of the Final Sale Order approving the Stalking Horse Bid as the Successful Bid and the District or its designee as the Successful Bidder.  The District has designated another entity to take title from the Debtors at Closing without further Court approval or process and such designation is hereby **APPROVED**.

      f.    **<u>Right to Be Heard</u>**.  The Debtors and any and all creditors, interest holders, the United States Trustee and other parties in interest, including specifically, but not limited to, the Co-Plan Proponents and the PBGC, may be heard as to any and all issues regarding the Sale, provided however, that a party who is merely a Qualified Bidder is not such a party in interest.

      g.    **<u>Overbid Fee</u>**.  There shall be no Overbid Fee or break-up fee.

      h.    **<u>Bankruptcy Court Approval</u>**.  The Sale shall be subject to the entry of the Final Sale Order and an order confirming the Plan except as otherwise specifically provided herein.  The District or other Successful Bidder may waive this requirement and elect to Close the Sale even if the Plan is not first or concurrently approved.  In the event

of such waiver, the District or other Successful Bidder, as the case may be, shall pay all documentary stamp taxes that may be due and owing.  The Final Sale Order shall contain findings and conclusions, including but not limited to:

(i)     the District, District Designee, or other Successful Bidder is (i) not a successor to the Debtors; (ii) not a sponsor of any condo-conversion, and (iii) entitled to a finding that the District, District Designee, or other Successful Bidder is a good-faith purchaser;

(ii)    the District, the District Designee, or other Successful Bidder is (1) entitled to the protections consistent with and found in 11 U.S.C. § 363(m); and (2) that the Sale is final and not subject to reversal or modification on appeal;

(iii)   the Sale was conducted in good-faith and at arm's length;

(iv)   the Property shall be sold free and clear of all liens, claims, interests and encumbrances with all valid liens, claims, interests, and encumbrances to attach to the proceeds of Sale, except outstanding *ad valorem* real property taxes and outstanding O&M Assessments.  In the event that the District is the Successful Bidder, the Property shall be conveyed to the District Designee without prejudice to or waiver of any rights to enforce, or cause the enforcement of, the collection of any delinquent installments of the City Center Bond Assessments securing the Bonds not satisfied by the Sale, against all third parties other than the Debtors and their affiliates, including but not limited to future principal amounts, interest, penalties, or other amounts arising from any future installment or maturity amounts due;

(v)    approving the Sale and transfer of the Property to the Successful Bidder;

(vi)   reconfirming and incorporating the terms of the related settlement between the Settlement Parties;

(vii)  ordering the immediate effectiveness of the Final Sale Order pursuant to Rule 6004(h), Fed.R.Bankr.P.; and

(viii) requiring the District to execute such documents and take such other actions (such as dismissal of the foreclosure and termination of any *lis pendens*) as may be necessary to

effectuate the Sale to the Buyer and to satisfy any liens it has on the Property, other than O&M assessments.

    i.    **Final Hearing, Confirmation Hearing and Final Sale Order**.   On August 18, 2014, at 1:30 p.m. the Court will hold the Sale hearing and the confirmation hearing at 801 N. Florida Avenue, Courtroom #8-A Tampa, Florida 33602, to review, consider and approve the Auction results, if any, and enter a Final Sale Order approving the Successful Bid and authorizing the Debtors to Close the Sale of the Property to the Successful Bidder, and enter a Confirmation Order.   The Final Sale Order will also contain findings and conclusions that (a) the Sale, including negotiations between the Debtors and the other Co-Plan Proponents, was conducted in good faith and at arms-length; (b) the Sale of the Property shall be free and clear of all liens, claims and encumbrances (except as set forth in the Sale Motion) pursuant to Section 363(b) and (f) of the Bankruptcy Code, with liens to attach to proceeds of the Sale, except as otherwise reserved and provided for herein, and (c) the Buyer is a good faith purchaser pursuant to Section 363(m) and entitled to the protections and benefits of Section 363(m).

    j.    **Forfeit of Deposit**.  If any Buyer fails to close the purchase in accordance with the terms hereof, it shall forfeit its Deposit and the Property will be sold to the Qualified Bidder submitting the next highest bid which is able to close in accordance with the terms hereof.  If there is no other Qualified Bidder, the District shall then become the Buyer and the Debtor shall immediately close the Sale to the District.

    k.    **No Representations**.  The Property shall be purchased on an "as is, where is" basis, with no representations or warranties (express or implied) of any kind or nature whatsoever, other than the representations and warranties contained in the PSA.

    l.    **Due Diligence**.   Due diligence must be completed in full, without reservation, at least one (1) business day prior to the Deadline to submit a Qualified Bid. Failure of any potential bidder to conduct due diligence shall not be cause to delay the Sale.

m.    **Marketing:  Debtors' Execution of the PSA**.  The Debtors have hired Colliers International South Florida ("**Colliers**") to serve as broker and to market the Property in accordance with the timelines set forth in the Sale Motion, and the Debtors' CRO shall coordinate, manage and direct the marketing of the Property with Colliers. The Debtors' CRO shall seek input from each of the Co-Plan Proponents and the PBGC as to those marketing activities and strategies, shall furnish to each of the Co-Plan Proponents and the PBGC[3] a copy of the marketing book, the marketing list, and the contents of the diligence site three days prior to the finalizing of such materials, lists, or sites, shall solicit and consider recommendation from them, and shall provide regular reports to them and the PBGC as to the marketing efforts. Each of the Co-Plan Proponents may furnish the names and contact information of prospective purchasers to the CRO, who shall include all of such parties in the marketing lists.  The Co-Plan Proponents and the CRO shall cooperate to achieve the highest and best sale of the Property.   The Debtors' CRO is authorized to execute all agreements necessary to implement this section of this Order, including the agreement with Colliers and the PSA with the Successful Bidder.

n.    **Payment of Purchase Price**.  The purchase price for the Property as finally approved by the Court at the Sale shall be payable in full at the Closing by wire transfer of immediately available funds; provided, however, that the District shall not be obligated to pay cash up to the Maximum Credit Bid.  The Co-Plan Proponents shall pay any amounts owed as costs of Sale, including fees, costs and expenses of the Broker, if any, and out-of-pocket closing costs at Closing as set forth on Schedule 1 to the Sale Motion which is incorporated herein by this reference.  The Buyer shall take title to the Property at Closing subject only to outstanding real estate taxes and O&M Assessments then due and owing.

---

[3] Some materials may have already been finalized and the Debtors will provide such materials to the PBGC.

13

o.   **Closing**.  The Sale of the Property shall be consummated at the law offices of Stichter Riedel Blain & Prosser, P.A. during normal business hours no later than five (5) business days after the entry of the Final Sale Order (provided that the Confirmation Order has been entered, unless such requirement is waived in writing by the Successful Bidder) (the "**Closing**").  On request of the Successful Bidder, the Debtors may extend the Closing, provided, however, that the Closing shall not be extended beyond September 3, 2014. The proceeds from the Sale (if the District is not the Successful Bidder) shall be disbursed at Closing, subject to and consistent with Schedule 1 to the Sale Motion.  In any event that results in a Closing, the Debtors shall receive a minimum aggregate amount of $250,000 from the District or the District Designee which shall be used to pay professional fees and make a distribution to holders of allowed unsecured claims in accordance with the Plan.

p.   **Co-Plan Proponents Plan/Disclosure Statement**.  The Co-Plan Proponents will file their Plan/Disclosure Statement by the deadline established by the Court.  The Court will conduct a consolidated hearing on approval of the Disclosure Statement and Confirmation of the Plan on **August 18, 2014 at 1:30 p.m. eastern daylight time**. The Court will enter an order conditionally approving the Plan and Disclosure Statement.

7.   The following schedule shall apply to this matter:

(a)   mailing of the Sale Notice together with the Bid Procedures Order within twenty-four (24) hours of receiving any contact information from the District regarding any additional prospective purchaser not previously noticed;

(b)   an Auction date on **August 12, 2014 at 10:00 a.m. eastern daylight time**;

(c)   a final hearing date on approval of the Successful Bid on **August 18, 2014 at 1:30 p.m. eastern daylight time**;

(d)    an outside Closing date to occur no later than five (5) business days after entry of the Final Sale Order; and

(e)    a confirmation hearing date on the same date as the hearing on entry of the Final Sale Order but not more than fourteen (14) days before or after the last Closing date.

8.    The form of the Sale Notice annexed to this Order as **Exhibit "B"** is APPROVED. The Co-Plan Proponents are authorized and directed to serve a copy of this Order, including the Sale Notice, by first class mail upon (a) the Office of the United States Trustee; (b) relevant taxing authorities; (c) all known creditors and parties in interest; (d) any and all lienholders; (e) all other parties that have expressed interest in the Property; (f) any party that contacted the Debtors regarding a sale of all or any portion of the Property; and (g) any party identified by the Co-Plan Proponents as an interested party. Any party wishing to bid on the Property must comply with the terms and conditions described in this Order, the Sale Motion and the Sale Notice. **Only parties that fully comply with such Sale Notice and Bid Procedures will be permitted to bid on the Property.**

9.    Any creditor or party in interest (other than an insider of any of the Debtors) may file an objection to the procedures set forth herein within fourteen (14) days of entry of this Order. The failure to file a timely written objection as provided herein shall be deemed a full and complete waiver of, and any such person who fails to file a timely written objection shall be forever barred from asserting or raising, any objection, claim, right or interest relative to this Order. If an objection is timely filed, it shall neither prevent the Auction from taking place nor prevent the Court from conducting a final sale hearing to approve the Sale, unless otherwise ordered by this Court.

10.    The CRO on behalf of the Debtors is ordered to immediately execute deeds to the Property and deliver said deeds to the CRO to be held in escrow consistent with this Order. The CRO is authorized and instructed to deliver such deeds to the District Designee on the earlier to occur of (i) an event of an uncured default consistent with the provisions of the Sale Motion; (ii) the Closing of the Sale to the District; or (iii) the Outside Date.

11.     Within five (5) days after the entry of this Order, the Debtors shall provide the District a list and copies of all existing executory contracts and unexpired leases relating to the ownership and operation of the Property.  Any Qualified Bidder, including the District, shall advise the Debtors no later than five (5) days prior to the Auction as to the executory contracts and unexpired leases to be assumed and assigned by the Debtors to the District or the Successful Bidder as well as any such contracts and/or leases to be rejected.  The District or any Successful Bidder shall satisfy the amounts necessary to "cure" any payments required to be paid under any executory contract or unexpired leases that the District or such Successful Bidder intends to assume, as a condition precedent to such assumption and assignment of any such executory contract or lease at Closing (the "**Cure Costs**"); provided, however, the Debtors shall obtain estoppel letters as to the amount necessary to cure no later than ten (10) days prior to the Auction.  In the event of a dispute as to the amount necessary to cure, the Debtors shall seek an expedited hearing thereon.  The District and/or any Successful Bidder shall have the right to remove any such executory contract and/or unexpired lease from the list of contracts and/or leases to be assumed and assigned in the event the amount necessary to cure is higher than projected and/or higher than what the District and/or any Successful Bidder is willing to pay in its sole and absolute discretion.  The Successful Bidder shall be responsible for paying all cure amounts in cash at Closing as a condition precedent to receiving an assignment of any of the assumed Contracts unless otherwise agreed to in writing.

12.     The Debtors are further authorized, empowered and directed to take such additional and other steps as may be necessary or appropriate to effectuate the Bid Procedures contained in the Sale Notice and this Order.

13.     Any objections to the proposed Sale of the Property must be filed with the Bankruptcy Court, and served (so as to be received) on counsel for the Co-Plan Proponents, no later than five (5) business days prior to the Final Sale Hearing.  The failure of any person or entity to timely file an objection shall be a bar to the assertion of any objection to the relief

sought in the Sale Motion or the consummation and performance of the Sale contemplated thereunder.

14.    The Sale of the Property and the Auction are in conjunction with the Plan and the Co-Plan Proponents are authorized to seek confirmation of the Plan simultaneously with the issuance of the Final Sale Order, and thereby qualify for the exemption contemplated under §1146(a) of the Bankruptcy Code.

15.    Further, and in accordance with the parties' settlement described in the Sale Motion, the Court APPROVES all the terms of the Settlement Parties' settlement, including without limitation, the following terms and conditions:

a.    Upon Closing of the Sale (except as set forth in the Sale Motion), dismissal with prejudice of all pending lawsuits by and between the Settlement Parties as follows:

i.    *City Center Cmty. Dev. Dist. v. Boardwalk and Baseball, Inc., Coleridge Corp., Boardwalk Land Dev., Inc., and Brenda Nestor*, Case No. 53-2009-CA-10330 Section 08, Circuit Court for the 10th Judicial Circuit, in and for Polk County, Florida;

ii.    *City Center Bonds, LLC, v. City Center Cmty. Dev. Dist., Marco Loffredo; Derrick Douglas; David Weychert; Michael Wadley; and Gregory Arnone*, Case No. 53-2012-CA-002697 Section 08, Circuit Court for the 10th Judicial Circuit, in and for Polk County, Florida, subject to the conditions in paragraph c below); and

iii.    *Boardwalk and Baseball, Inc. Coleridge Corp., v. BTI Partners, LLC; BTI City Center Of Orlando GP Manager, LLC, separately and as Manager of BTI City Center Orlando Ventures GP, LLC, separately and as General Partner of BTI City Center Orlando Operator, LLC, separately and as Manager of City Center Bonds, LLC; and John Doe Entity #1*, Adv. Case No. 8:14-ap-127-MGW, U.S. Bankr. Court for the Middle District of Florida.

b.      The execution and delivery, post-Closing, of releases in favor of all of the Co-Plan Proponents and Settlement Parties; and

c.      During the marketing of the Property, the Settlement Parties shall not take any action to disrupt the Sale process or chill the bidding.  Nor shall any of the Settlement parties during the Sale process assert any new or additional litigation or any new or additional claims in existing Litigation against one another.

The Court recognizes that the Board Supervisors of the District are obligated by law (i.e. Chapter 112 and 190, Florida Statutes) to act as independent public officers.  The Settlement Parties shall cooperate in requesting three (3) individuals as described below to be appointed to the District Board which process shall commence no later than ten (10) days following the entry of this Order as follows:

1.      A District Board Meeting shall be scheduled within ten (10) days following the entry of this Order;

2.      At the District Board meeting referred to in the subsection immediately above, the following transition of District Board Members shall occur:  Debtors shall request the resignation of three (3) Board members.  The Bondholder shall then nominate and present an individual to fill the first vacant board seat upon which the then existing Board shall vote to appoint said individual to the Board.  The Bondholder shall then nominate and present an individual to fill the second vacant board seat upon which the then existing Board shall vote to appoint said individual to the Board.  The Settlement Parties shall then nominate and present Larry S. Hyman to fill the third vacant board seat upon which the then existing Board shall vote to appoint Mr. Hyman to the Board.  Following this process, there shall be five Supervisors comprised of two Debtors representatives, two Bondholder representatives and Larry S. Hyman.

The Co-Plan Proponents and the Settlement Parties are ordered to use their best efforts to cause three Supervisors to resign and the Board to appoint three individuals as set forth above.  Only after the resignations and appointments of new board members as specifically described above, shall the Supervisors and the Co-Plan Proponents execute mutual releases that will be paced in escrow pending Closing of the Sale.  Provided  that at least three (3) Board members resign and the transition of the Board occurs as set forth above, all pending litigation against the resigning supervisors shall be dismissed with prejudice with ten (10) business days after the Closing of the Sale.  Within ten (10) days after the Closing of the Sale, the escrow agent shall deliver the mutual releases by and among the three resigning supervisors and the Co-Plan Proponents to the respective parties.

In the event the District is the Successful Bidder and the District is the Buyer, (with title transferred upon the Closing of the Sale to the District Designee), Larry Hyman shall resign as supervisor and the remaining four (4) member board (comprised of two Debtor representatives and two Bondholder representatives) shall vote to appoint an individual nominated by the Bondholder to fill the seat vacated by Mr. Hyman.  Within ten (10) business days following the appointment of the third Bondholder representative, mutual releases shall be provided from escrow to the two sitting supervisors affiliated with the Debtors and the other Co-Plan Proponents, which will include releases from the supervisors to the Bondholder, the Indenture Trustee, the Debtors, and the District as well as from the Bondholder, the Indenture Trustee, the Debtors, and the District to the two sitting supervisors and all pending litigation against the two supervisors shall be dismissed with prejudice.  Thereafter, supervisors shall be appointed or elected to the Board according to the District's standard procedure as required by applicable non-bankruptcy law.

If a third party Successful Bidder is approved by the Court, then, on or before the date that is ten (10) days after the Closing of the Sale to such third party Successful

Bidder, Gary Moyer, as receiver, shall promptly seek an order from the State Court discharging himself as receiver, and all Supervisors nominated by the Bondholder, as well as Mr. Hyman, shall resign.  Thereafter, supervisors shall be appointed or elected to the Board according to the District's standard procedure as required by applicable non-bankruptcy law.

16.    The entry of this Order constitutes an immediate assignment from the Debtors (as landowners) to the receiver, Mr. Gary Moyer, of a sufficient number of voting rights to elect three Board members at future Board elections which assignment shall terminate at the Closing of the Sale.  Noting herein shall enhance or diminish any rights that Posner Park Retail, LLP or any other owner of property within the confines of the District has with respect to the selection of Supervisors following the Closing.

17.    In the event that the Sale is not timely completed or there is an Uncurable Default or a Curable Default that has not been cured with in the time fixed in the Sale Motion, if applicable, the Court, shall immediately direct the CRO to deliver all documents held in escrow consistent as set forth in the Sale Motion, including but not limited to deeds conveying the Property to the District Designee free and clear of all liens, claims and encumbrances except *ad valorem* real estate taxes and outstanding O&M Assessments consistent with the agreement on finality set forth more fully in paragraphs 43 and 44 of the Sale Motion.

18.    The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

DONE and ORDERED at Tampa, Florida on May 09, 2014 _____.

_____

Michael G. Williamson
United States Bankruptcy Judge

Attorney Edward J. Peterson is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

# Composite
# Exhibit "A"

## LEGAL DESCRIPTION OF PROPERTY

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF POLK, STATE OF FLORIDA, AND IS DESCRIBED AS FOLLOWS:

PARCEL ONE:

THAT PART OF SECTIONS 7, 17 & 18, TOWNSHIP 26 SOUTH, RANGE 27 EAST, POLK COUNTY, FLORIDA, DESCRIBED AS: BEGINNING 117.88 FEET WEST OF THE NE CORNER OF SECTION 18, RUN S 35° E, 500.62 FEET TO POINT ON A CURVE; SOUTHERLY ALONG CURVE 306.06 FEET; THENCE SOUTH 1000 FEET TO A POINT ON A CURVE; THENCE SOUTHWESTERLY ALONG CURVE 812.41 FEET; THENCE N 86°49'57" W, 489.51 FT TO A POINT ON A CURVE; THENCE SOUTHWESTERLY ALONG CURVE 377.23 FEET; THENCE S 62°06'42" W, 300 FEET TO THE EAST R/W OF U.S. HIGHWAY 27; THENCE N 27°53'18" W, 1435.01 FEET; THENCE N 62°06'42" E, 25.89 FEET; THENCE N 27°53'18" W, 267.11 FEET; THENCE N 62°06'42" E, 200 FEET; THENCE N 27°53'18" W, 200 FEET TO A POINT ON A CURVE; THENCE NORTHEASTERLY ALONG CURVE 355.92 FEET; THENCE N 03°03'18" W, 247.78 FEET A TO POINT ON A CURVE; THENCE NORTHERLY ALONG CURVE 197.99 FEET; THENCE N 13°49'24"E, 400 FEET TO A POINT ON A CURVE; THENCE NORTHEASTERLY ALONG CURVE 471.89 FEET; THENCE N 62°06'42" E, 300 FEET TO A POINT ON A CURVE; THENCE NORTHEASTERLY & SOUTHEASTERLY ALONG CURVE 578.67 FEET; THENCE S 35° E, 1098.24 FEET TO POINT OF BEGINNING, LESS RIGHT-OF-WAY PARCEL 118 BEING RIGHT-OF-WAY FOR I-4 AS DESC IN O.R. BOOK 4665, PAGE 1706 & LESS THAT PART LYING WITHIN VICTOR POSNER CITY CENTER PHASE 1A, AS RECORDED IN PLAT BOOK 141 PAGES 48 THROUGH 50 & LESS THAT PART LYING WITHIN VICTOR POSNER CITY CENTER PHASE 1B AS RECORDED IN PLAT BOOK 142 PAGES 24 THROUGH 26 & LESS THAT PART LYING WITHIN VICTOR POSNER CITY CENTER PHASE 1F AS RECORDED IN PLAT BOOK 148 PAGES 1 AND 2.

PARCEL TWO:

THAT PART OF LOT 1, VICTOR POSNER CITY CENTER PHASE 1A, AS RECORDED IN PLAT BOOK 141 PAGES 48 THROUGH 50, DESCRIBED AS LYING WITHIN: BEGIN 117.88 FEET WEST OF NE CORNER OF SECTION 18, TOWNSHIP 26 SOUTH, RANGE 27 EAST, POLK COUNTY, FLORIDA, RUN S 35° E, 500.62 FEET TO A POINT ON A CURVE; THENCE SOUTHERLY ALONG CURVE 306.06 FEET; THENCE SOUTH 1000 FEET TO A POINT ON A CURVE; THENCE SOUTHWESTERLY ALONG CURVE 812.41 FEET; THENCE N 86°49'57" W, 489.51 FEET TO A POINT ON A CURVE; THENCE SOUTHWESTERLY ALONG CURVE 377.23 FEET; THENCE S 62°06'42" W, 300 FEET TO EAST R/W OF U. S. HIGHWAY 27; THENCE N 27°53'18" W, 1435.01 FEET; THENCE N 62°06'42" E, 25.89 FEET THENCE N 27°53'18" W, 267.11 FEET; THENCE N 62°06'42" E, 200 FEET; THENCE N 27°53'18" W, 200 FEET TO A POINT ON A CURVE; THENCE NORTHEASTERLY ALONG CURVE 355.92 FEET; THENCE N 03°03'18"W, 247.78 FEET TO A POINT ON A CURVE; THENCE NORTHEASTERLY ALONG CURVE, 197.99 FEET; THENCE N 13°49'24"E, 400 FEET TO A POINT ON A CURVE; THENCE NORTHEASTERLY ALONG CURVE 471.89 FEET; THENCE N 62°06'42" E, 300 FEET TO A POINT ON A CURVE; THENCE NORTHEASTERLY & SOUTHEASTERLY ALONG CURVE 578.67 FEET; THENCE S

35° E, 1098.24 FEET TO THE POINT OF BEGINNING, LESS RIGHT-OF-WAY PARCEL 118, BEING RIGHT-OF-WAY FOR I-4 AS DESCRIBED IN O.R. BOOK 4665-1706.

PARCEL THREE:

LOT 4, VICTOR POSNER CITY CENTER PHASE 1F, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 148, PAGES 1 AND 2, PUBLIC RECORDS OF POLK COUNTY, FLORIDA.

PARCEL FOUR:

LOT 5, VICTOR POSNER CITY CENTER PHASE 1F, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 148, PAGES 1 AND 2, PUBLIC RECORDS OF POLK COUNTY, FLORIDA.

PARCEL FIVE:

LOT 6, VICTOR POSNER CITY CENTER PHASE 1F, AS RECORDED IN PLAT BOOK 148, PAGES 1 AND-2, LESS THAT PART LYING WITHIN THE FOLLOWING: BEGIN AT THE NE COR OF THE NW1/4 OF THE NW1/4 OF SEC 17, TOWNSHIP 26 SOUTH, RANGE 27 EAST, POLK COUNTY, FLORIDA, RUN SOUTH 1926.85 FEET' THENCE N 76°22'33" W, 943.27 FEET; THENCE WEST 45 FEET TO A POINT ON A CURVE; THENCE SOUTHWESTERLY ALONG CURVE 969.59 FEET; THENCE S 53°41'40" W, 566.40 FEET: THENCE S 36°18'20" E, 20 FEET, THENCE S 62°06'42"W, 482.92 FEET TO ROAD R/W; THENCE N 27°53'18"W, 560 FEET; THENCE N 62°06'42"E, 300 FEET TO A POINT ON A CURVE; THENCE NORTHEASTERLY ALONG CURVE 377.23 FEET; THENCE S 86°49'57" E, 489.S1 FEET TO POINT ON CURVE; THENCE NORTHEASTERLY ALONG CURVE 812.41 FEET; THENCE NORTH 1000 FEET TO A POINT ON A CURVE; THENCE NORTHWESTERLY ALONG CURVE 306.06 FEET; THENCE N 35°W, 1598.87 FEET TO A POINT ON A CURVE; THENCE WESTERLY ALONG CURVE 578.67 FEET; THENCE S 62°06'42" W, 300 FEET TO A POINT ON A CURVE; THENCE SOUTHWESTERLY ALONG CURVE 471.89 FEET; THENCE S 13°49'24" W, 400 FEET TO A POINT ON A CURVE; THENCE SOUTHERLY ALONG CURVE 197.99 FEET; THENCE S 03°03'18"E, 247.78 FT TO A POINT ON A CURVE; THENCE SOUTHWESTERLY ALONG CURVE 355.92 FEET; THENCE S 62°06'42" W, 200 FEET: THENCE N 27°53'18" W, 250 FEET; THENCE S 62°06'42" W, 10.31 FEET TO A POINT ON A CURVE: THENCE NORTHEASTERLY ALONG CURVE 534.98 FEET; THENCE N 13°49'24" E, 1219.38 FEET; THENCE S 76°10'36" E, 16.98 FEET; THENCE N 13°49'24" E, 113.30 FEET TO A POINT ON A CURVE; THENCE NORTHEASTERLY ALONG CURVE 386.08 FEET; THENCE N 50°12'21"E, 1271.06 FEET TO A POINT ON A CURVE; THENCE NORTHEASTERLY ALONG CURVE 818.59 FEET; THENCE N 52°57'05" E, 73.87 FEET TO A POINT ON A CURVE; THENCE NORTHEASTERLY ALONG CURVE 828.7S FEET; THENCE N 50°12'21" E, 1174.63 FT; THENCE SOUTH 4278.03 FEET TO THE POINT OF BEGINNING.

PARCEL SIX:

TRACT B, VICTOR POSNER CITY CENTER PHASE 1F, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 148, PAGES 1 AND 2, PUBLIC RECORDS OF POLK COUNTY, FLORIDA.

PARCEL SEVEN:

Seven (a)

TRACTS D AND E, VICTOR POSNER CITY CENTER PHASE 1B, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 142, PAGES 24, 25 AND 26, PUBLIC RECORDS OF POLK COUNTY, FLORIDA.

AND

Seven (b)

THAT PART OF SECTIONS 7, 8, 17 AND 18, TOWNSHIP 26 SOUTH, RANGE 27 EAST, POLK COUNTY, FLORIDA, DESCRIBED AS: BEGIN AT THE NORTHEAST CORNER OF THE NW1/4 OF NW1/4 OF SECTION 17, RUN SOUTH 1926.85 FEET; THENCE N 76° 22' 33" W, 943.27 FEET; THENCE WEST 45 FEET TO A POINT ON A CURVE; THENCE SOUTHWESTERLY ALONG CURVE 969.59 FEET, THENCE S 53° 41' 40" 566.40 FEET; THENCE S 36° 18' 20" E, 20 FEET; THENCE S 62° 06' 42" W, 482.92 FEET TO ROAD R/W; THENCE N 27° 53' 18" W, 560 FEET; THENCE N 62° 06' 42" E, 300 FEET TO A POINT ON A CURVE; THENCE NORTHEASTERLY ALONG CURVE 377.23 FEET; THENCE S 86° 49' 57" E, 489.51 FEET TO A POINT ON A CURVE; THENCE NORTHEASTERLY ALONG CURVE 812.41 FEET; THENCE NORTH 1000 FEET TO A POINT ON A CURVE; THENCE NORTHWESTERLY ALONG CURVE 306.06 FEET; THENCE N 35° W, 1598.87 FEET TO A POINT ON A CURVE; THENCE WESTERLY ALONG CURVE 578.67 FEET; THENCE S 62° 06' 42" W, 300 FEET TO A POINT ON A CURVE; THENCE SOUTHWESTERLY ALONG CURVE 471.89 FEET; THENCE S 13° 49' 24" W, 400 FEET TO POINT ON A CURVE; THENCE SOUTHERLY ALONG CURVE 197.99 FEET; THENCE S 03° 03' 18" E, 247.78 FEET TO A POINT ON A CURVE; THENCE SOUTHWESTERLY ALONG CURVE 355.92 FEET; THENCE S 62° 06' 42" W, 200 FEET; THENCE N 27° 53' 18" W, 250 FEET; THENCE S 62° 06' 42 W, 10.31 FEET TO A POINT ON A CURVE; THENCE NORTHEASTERLY ALONG CURVE 534.98 FEET; THENCE N 13 ° 49' 24" E, 1219.38 FEET, THENCE S 76° 10' 36 E, 16.98 FEET; THENCE N 13° 49' 24" E, 113.30 FEET TO A POINT ON A CURVE; THENCE NORTHEASTERLY ALONG CURVE 386.08 FEET; THENCE N 50° 12' 21" E, 1271.06 FEET TO A POINT ON A CURVE; THENCE NORTHEASTERLY ALONG CURVE 818.59 FEET; THENCE N 52° 57' 05" E. 73.87 FEET TO A POINT ON A CURVE; THENCE NORTHEASTERLY ALONG CURVE 828.75 FEET; THENCE N 50° 12' 21" E, 1174.63 FEET; THENCE SOUTH 4278.03 FEET TO THE POINT OF BEGINNING, LESS R/W PCL 132 BEING R/W FOR I-4 AS DESC IN O.R. BOOK 4665, PAGE 1706, AND LESS COMMENCE AT THE NORTHWEST CORNER OF THE NE1/4 OF SECTION 18, TOWNSHIP 26 SOUTH, RANGE 27 EAST, RUN SOUTH 178.31 FEET ALONG THE WEST LINE OF NE1/4; THENCE S 28° 01' 06" E, 614.16 FEET, THENCE N 61° 55' 54" E, 318.1 FEET, THENCE NORTHEASTERLY ALONG CURVE 24.88 FT TO THE POINT OF BEGINNING; THENCE NORTHEASTERLY ALONG CURVE 330.54 FEET; THENCE N 3° 14' 23" W, 130.79 FEET; THENCE S 20° 22' 23" W, 276.62 FEET; THENCE SOUTHWESTERLY ALONG CURVE 158.13 FEET TO THE POINT OF BEGINNING, AND LESS THAT PART LYING WITHIN VICTOR POSNER CITY CENTER, AS RECORDED IN PLAT BOOK 141 PAGES 48 THROUGH 50, AND LESS THAT PART LYING WITHIN VICTOR POSNER CITY CENTER PHASE 1B AS RECORDED IN PLAT BOOK 142 PAGES 24 THROUGH 26, AND LESS THAT PART LYING WITHIN VICTOR POSNER CITY CENTER PHASE 1F AS RECORDED IN PLAT BOOK 148 PAGES 1 AND-2.

AND

Seven (c)

THAT PART OF LOT 1, VICTOR POSNER CITY CENTER PHASE 1A, AS RECORDED IN PLAT BOOK 141 PAGES 48 THROUGH 50 LYING WITHIN: BEGIN AT THE NE COR OF NW1/4 OF NW1/4 OF SECTION 17, TOWNSHIP 26 SOUTH, RANGE 27 EAST, RUN SOUTH 1926.85 FEET; THENCE N 76° 22' 33" W, 943.27 FEET; THENCE WEST 45 FEET TO A POINT ON A CURVE; THENCE SWLY ALONG CURVE 969.59 FEET; THENCE S 53° 41' 40" W, 566.40 FEET; THENCE S 36° 18' 20" E, 20 FEET; THENCE S 62° 06' 42" W, 482.92 FEET TO ROAD R/W; THENCE N 27° 53' 18" W, 560 FEET; THENCE N 62° 06' 42" E, 300 FEET TO A POINT ON A CURVE; THENCE NELY ALONG CURVE 377.23 FEET; THENCE S 86° 49' 57" E, 489.51 FEET TO A POINT ON A CURVE; THENCE NELY ALONG CURVE 812.41 FEET; THENCE NORTH 1000 FEET TO A POINT ON A CURVE; THENCE NWLY ALONG CURVE 306.06 FEET; THENCE N 35° W, 1598.87 FEET TOA POINT ON A CURVE; THENCE WLY ALONG CURVE 578.67 FEET; THENCE S 62° 06' 42" W, 300 FEET TO A POINT ON A CURVE; THENCE SWLY ALONG CURVE 471.89 FEET; THENCE S 13° 49' 24" W 400 FEET TO A POINT ON A CURVE; THENCE SLY ALONG CURVE 197.99 FEET; THENCE S 03° 03' 18" E, 247.78 FEET TO A POINT ON A CURVE; THENCE SWLY ALONG CURVE 355.92 FEET; THENCE S 62° 06' 42" W, 200 FEET; THENCE N 27° 53' 18" W, 250 FEET; THENCE S 62° 06' 42" W, 10.31 FEET TO A POINT ON A CURVE; THENCE NELY ALONG CURVE 534.98 FEET; THENCE N 13° 49' 24" E, 1219.38 FEET; THENCE S 76° 10' 36" E, 16.98 FEET; THENCE N 13° 49' 24" E, 113.30 FEET TO A POINT ON A CURVE; THENCE NELY ALONG CURVE 386.08 FEET; THENCE N 50° 12' 21" E, 1271.06 FEET TO A POINT ON A CURVE; THENCE NELY ALONG CURVE 818.59 FEET; THENCE N 52° 57' 05" E, 73.87 FEET TO A POINT ON A CURVE; THENCE NELY ALONG CURVE 828.75 FEET; THENCE N 50° 12' 21" E, 1174.63 FEET; THENCE SOUTH 4278.03 FEET TO THE POINT OF BEGINNING, LESS R/W PARCEL 132 BEING R/W FOR I-4 AS DESCRIBED IN O.R. BOOK 4665, PAGE 1706, AND LESS: COMMENCE AT THE NW COR OF NE1/4 OF SECTION 18, TOWNSHIP 26 SOUTH, RANGE 27 EAST, RUN SOUTH 178.31 FT ALONG THE WEST LINE OF NE1/4; THENCE S 28° 01' 06" E, 614.16 FEET; THENCE N 61° 55' 54" E, 318.1 FEET; THENCE NELY ALONG A CURVE 24.88 FEET TO THE POINT OF BEGINNING; THENCE NELY ALONG CURVE 330.54 FEET; THENCE N 3° 14' 23" W, 130.79 FEET; THENCE S 20° 22' 23" W, 276.62 FEET; THENCE SWLY ALONG CURVE 158.13 FT TO THE POINT OF BEGINNING

AND

Seven (d)

THAT PART OF LOT 6, VICTOR POSNER CITY CENTER PHASE 1F, AS RECORDED IN PLAT BOOK 148 PAGES 1 AND-2, LYING WITHIN THE FOLLOWING: THAT PART OF SECTIONS 7, 8, 17 AND 18; TOWNSHIP 26 SOUTH, RANGE 27 EAST, DESCRIBED AS BEGIN AT THE NE CORNER OF THE NW1/4 OF NW1/4 OF SECTION 17; THENCE SOUTH 1926.85 FEET; THENCE N 76° 22' 33" W, 943.27 FEET, THENCE WEST 45 FEET TO A POINT ON A CURVE; THENCE SWLY ALONG CURVE 969.59 FEET; THENCE S 53° 41' 40" W, 566.40 FEET; THENCE S 36° 18' 20" E, 20 FEET; THENCE S 62° 06' 42" W, 482.92 FEET TO ROAD R/W; THENCE N 27° 53' 18" W, 560 FEET; THENCE N 62° 06' 42" E, 300 FEET TO A POINT ON A CURVE; THENCE NELY ALONG CURVE 377.23 FEET; THENCE S 86° 49' 57" E, 489.51 FEET TO A POINT ON A CURVE;

THENCE NELY ALONG CURVE 812.41 FEET; THENCE NORTH 1000 FEET TO A POINT ON A CURVE; THENCE NWLY ALONG CURVE 306.06 FEET; THENCE N 35° W, 1598.87 FEET TO A POINT ON A CURVE; THENCE WESTERLY ALONG CURVE 578.67 FEET; THENCE S 62° 06' 42" W, 300 FEET TO A POINT ON A CURVE; THENCE SWLY ALONG CURVE 471.89 FEET; THENCE S 13° 49' 24" W, 400 FEET TO A POINT ON A CURVE; THENCE SLY ALONG CURVE 197.99 FEET; THENCE S 03° 03' 18" E, 247.78 FEET TO A POINT ON A CURVE; THENCE SWLY ALONG CURVE 355.92 FEET; THENCE S 62° 06' 42" W, 200 FEET; THENCE N 27° 53' 18" W, 250 FEET; THENCE S 62° 06' 42" W, 10.31 FEET TO A POINT ON A CURVE; THENCE NELY ALONG CURVE 534.98 FEET; THENCE N 13° 49' 24" E, 1219.38 FEET; THENCE S 76° 10' 36" E, 16.98 FEET; THENCE N 13° 49' 24" E, 113.30 FEET TO A POINT ON A CURVE; THENCE NELY ALONG CURVE 386.08 FEET; THENCE N 50°12' 21" E, 1271.06 FEET TO A POINT ON A CURVE; THENCE NELY ALONG CURVE 818.59 FEET; THENCE N 52° 57' 05" E, 73.87 FEET TO A POINT ON A CURVE; THENCE NELY ALONG CURVE 828.75 FEET; THENCE N 50°12' 21" E, 1174.63 FEET; THENCE SOUTH 4278.03 FEET TO THE POINT OF BEGINNING.

LESS AND EXCEPT FROM ALL OF THE ABOVE PARCELS, THE FOLLOWING PARCELS OR PROPERTIES:

THOSE PROPERTIES DESCRIBED IN SPECIAL WARRANTY DEEDS RECORDED APRIL 12, 2007 IN OFFICIAL RECORDS BOOK 7247, PAGE 29 AND IN OFFICIAL RECORDS BOOK 7247, PAGE 145, OF THE PUBLIC RECORDS OF POLK COUNTY, FLORIDA.

THOSE PARCELS CONVEYED TO POLK COUNTY IN OFFICIAL RECORDS BOOK 8065, PAGE 967 AND OFFICIAL RECORDS BOOK 8065, PAGE 971, OF THE PUBLIC RECORDS OF POLK COUNTY, FLORIDA.

THOSE PARCELS CONVEYED TO CITY CENTER COMMUNITY DEVELOPMENT DISTRICT IN OFFICIAL RECORDS BOOK 7363, PAGE 314 AND OFFICIAL RECORDS BOOK 7813, PAGE 2274, OF THE PUBLIC RECORDS OF POLK COUNTY, FLORIDA.

NOTE: PARCELS ONE TO SIX ARE OWNED BY BOARDWALK AND BASEBALL, INC., A DELAWARE CORPORATION, F.K.A. CIRCUS WORLD, INC., A DELAWARE CORPORATION, BY VIRTUE OF WARRANTY DEEDS RECORDED IN OFFICIAL RECORDS BOOK 2421, PAGE 275, OFFICIAL RECORDS BOOK 2241, PAGE 1770, AND QUIT CLAIM DEED, DISCLAIMER AND RELEASE RECORDED IN OFFICIAL RECORDS BOOK 7813, PAGE 2277, ALL OF THE PUBLIC RECORDS OF POLK COUNTY, FLORIDA

NOTE: PARCEL SEVEN IS OWNED BY COLERIDGE CORPORATION, A DELAWARE CORPORATION, BY VIRTUE OF WARRANTY DEED RECORDED IN OFFICIAL RECORDS BOOK 2528, PAGE 1431, OF THE PUBLIC RECORDS OF POLK COUNTY, FLORIDA

# Exhibit "B"

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION
www.flmb.uscourts.gov

In re:

Chapter 11

BOARDWALK AND BASEBALL, INC.,
COLERIDGE CORPORATION,
BOARDWALK LAND DEVELOPMENT, INC.,

Case No. 8:14-bk-317-MGW
Case No. 8:14-bk-318-MGW
Case No. 8:14-bk-319-MGW

Debtors.

*Jointly Administered Under*
*Case No. 8:14-bk-317-MGW*

_____/

## NOTICE OF PROPOSED SALE AND OF DEADLINE AND PROCEDURES FOR SUBMISSION OF COMPETING BIDS

**NOTICE IS HEREBY GIVEN** that BOARDWALK AND BASEBALL, INC., COLERIDGE CORPORATION, AND BOARDWALK LAND DEVELOPMENT, INC. (collectively, the "**Debtors**"), have sought approval of the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "**Bankruptcy Court**") to enter into an Agreement for Purchase and Sale of Property (the "**PSA**") with the City Center Community Development District (the "**District**") at a purchase price equal to a credit bid in the amount of $25,000,000 (the "**Stalking Horse Bid**"), for the sale of certain real properties located in Polk County, Florida (the "**Real Property**"), which term is used to and includes all improvements (the "**Improvements**") owned by Sellers and/or located upon the Real Property, and such Sellers' interests, if any, in and to (i) all strips and gores of land lying adjacent to the property, lands underlying any adjacent streets or roads, easements, privileges, rights-of-way, riparian and other water rights, and other appurtenances pertaining to or accruing to the benefit of the Real Property; (ii) all fixtures currently located on the Real Property (the "**Personal Property**"); (iii) all licenses, permits, contract rights, development rights, entitlements and approvals pertaining to the ownership operation and/or proposed development of the Real Property, including, but not limited to, the existing development rights, governmental approvals, density rights, licenses, contract rights, impact fee credits, permits, licenses, development orders and building permits, including without limitation any rights with respect to the Development Order for Circus World, a Development of Regional Impact, DRI 86-1, recorded in Official Records Book 2505, Page 1630, of the Public Records of Polk County, as amended from time-to-time, and the terms and conditions of that Development Agreement for Victor Posner City Center DRI – PHASE 1 recorded May 22, 2006 in Official Records Book 6787, Page 503, as affected by Restated, Amended & Updated

Development Agreement for Victor Posner City Center DRI – PHASE 1 recorded November 16, 2006 in Official Records Book 7059, Page 1074, and Restated, Amended, Updated Development Agreement for Victor Posner City Center Development of Regional Impact recorded January 27, 2010 in Official Records Book 8063, Page 1200, and Restated, Amended, and Updated Development Agreement for Victor Posner City Center Development of Regional Impact recorded August 13, 2013 in Official Records Book 9032, Page 2036, of the Public Records of Polk County, Florida (collectively, the "**DRI Rights**"); and (iv) all of Sellers' general intangible rights pertaining to ownership and proposed development of the Real Property (all of Sellers' interest in the Real Property, Improvements, the Personal Property and all other property and rights described herein are collectively referred to as the "**Property**"). The Property shall be sold as one lot and shall not be offered in smaller parcels.

On April __, the Debtors, the District, U.S. Bank National Association, solely as indenture trustee, and City Center Bonds, LLC (collectively, the "**Co-Plan Proponents**") filed with the Bankruptcy Court a motion (the "**Sale Motion**") seeking, among other things, the authority of the Bankruptcy Court for the sale (the "**Sale**") of the Property to the District or its designee and to solicit competing bids for the sale of the Property, to schedule an auction, if necessary, and to seek the approval of the sale of the Property free and clear of all liens, claims and encumbrances, except for those specified in the PSA.

This Notice is intended to summarize briefly certain important features of the Sale Motion, the procedures for the solicitation of offers for the proposed sale of the Property pursuant to the terms of the Sale Motion and to notify prospective purchasers and other parties in interest of the filing of the Sale Motion and of the deadline and procedures for the submission of any bids. Prospective purchasers and other parties in interest should not rely solely upon the Notice as it is intended to be a brief summary only, but should instead review the Sale Motion and other relevant documents on file with the Clerk of the Bankruptcy Court.

**NOTICE IS FURTHER GIVEN** that the Sale Motion and the PSA are on file with the Bankruptcy Court and are available for inspection and photocopying during regular business hours at the Office of the Clerk of the United States Bankruptcy Court, Tampa Division, 801 N. Florida Ave., Ste. 555, Tampa, Florida 33602. Any party wishing to receive a copy of the Sale Motion and PSA may obtain such copy, via United States first class mail or by email, upon written request to Edward J. Peterson, III, Esquire, counsel for the Debtors, who may be contacted by mail at Stichter, Riedel, Blain & Prosser, P.A., 110 E. Madison Street, Suite 200, Tampa, Florida 33602, or by email at epeterson@srbp.com.

**NOTICE IS FURTHER GIVEN** that the following procedures (the "**Bid Procedures**") are proposed:

(a)    **Qualified Bids**.  To constitute a Qualified Bid, each bidder other than the District must deliver to each of the respective counsel for the Co-Plan Proponents and counsel for the Debtors, in trust no later than **5:00 p.m., eastern standard time, on August 4, 2014**: (i) a signed purchase and sale contract, in form and content substantially similar to the PSA, with a redlined copy showing any changes, in an amount sufficient to comply with the Minimum Bid Requirements (defined below), without contingency of any kind; (ii) an earnest money deposit equal to $3,000,000 in cleared funds (a "**Deposit**"); and (iii) written evidence of financial ability to pay, free of any contingency, an amount equal to or in excess of the Minimum Bid Requirement (as defined below) on or before **August 4, 2014 at 5:00 p.m. eastern standard time** (a "Qualified Bid").  The Co-Plan Proponents, subject to the Court's approval, shall have the sole discretion, to determine whether a bid is a Qualified Bid (a "**Qualified Bidder**").  The Co-Plan Proponents will notify parties three (3) business days prior to the Auction date whether any bid qualified as a Qualified Bid.

(b)    **Minimum Bid Requirements**.    Any Qualified Bidder must execute a purchase and sale agreement that is in substantially the same form as the PSA which shall include a cash purchase without contingency and including an initial bid of at least $25,250,000, plus assumption or the payment of real estate taxes and outstanding O&M Assessments as set forth in the PSA and any Cure Costs (as defined in the Sale Motion) required to be paid (the "**Minimum Bid Amount**").  The Minimum Bid Amount represents an amount sufficient to satisfy the following:  (i) administrative costs of the Debtors' estates for professional fees and costs, including costs of sale; and (ii) the Cure Costs, if any.    Any subsequent Qualified Bids to be made over the Minimum Bid Amount shall be made in increments of at least $250,000 (collectively with the Minimum Bid Amount, the "**Minimum Bid Requirements**").    The Sale Notice shall contain the Minimum Bid Amount and the Minimum Bid Requirements.

(c)    **Earnest Money Deposit**.  The Deposit required shall be payable by cashier's or certified check, payable to "Arnstein & Lehr LLP as escrow agent" or by wire transfer of immediately available funds on or before **August 4, 2014 at 5:00 p.m. Eastern Standard Time**.  The Deposit, together with any interest accrued thereon, will be applied as a credit against the purchase price paid by the Buyer (defined below). At the conclusion of the Sale and upon Court approval of the winning bid, all Deposits made by Qualified Bidders other than the Buyer will be promptly returned (without interest); **provided, however, that a third party Qualified Bidder who makes the second highest and best bid (the "Back-Up Bid") shall remain the back-up bidder (the "Back-Up Bidder") until closing of the Sale. In the event the Back-Up Bid is the Successful Bid, the Sale to the Back-Up Bidder shall close pursuant to the Bid Procedures. In the event of a Back-Up Bidder default, the District shall become the Back-up Bidder and close the Sale by credit bid in an amount equal to its last highest credit bid, but not to exceed the Maximum Credit Bid. In the event the Successful Bidder and/or the Back-Up Bidder is unable to close the Sale, the Successful Bidder and/or Back-Up Bidder's Deposit shall be forfeited and**

3

distributed 50% to the Debtors and 50% to the Indenture Trustee for the benefit of the Bondholder.  The Bankruptcy Court shall have exclusive jurisdiction to resolve any disputes over any such Deposit.

(d)     **Ability of the District to Credit Bid**.  The Stalking Horse Bid shall be a credit bid.  The District shall be entitled to credit bid up to the Maximum Credit Bid without complying with the Minimum Bid Requirements. No other party shall be permitted to credit bid or shall be excused from the Bid Procedures or Minimum Bid Requirements. The Stalking Horse Bid is deemed accepted by the Debtors and Co-Plan Proponents, subject to Bankruptcy Court approval of the Sale Motion. The District shall be deemed a Qualified Bidder and is excused from having to comply with the provisions of subparagraph (a) above and shall be entitled to the protections of 11 U.S.C. § 363(m) if it is the Successful Bidder.

(e)     **Higher and Better Bids**. The Auction shall be conducted on **August 12, 2014 at 10:00 a.m. eastern standard time** at the offices of Stichter Riedel Blain & Prosser, P.A. if, and only if, there is at least one Qualified Bidder who has met the requirements for a Qualified Bidder and been accepted as a Qualified Bidder. At the Auction, Qualified Bidders may submit bids equal to or greater than the Minimum Bid Requirements, in increments of at least $250,000, until the conclusion of the Auction.  The entity that submits what the Co-Plan Proponents believe constitutes the highest and best offer shall constitute the "Successful Bidder."   The bid of the Successful Bidder (the "**Successful Bid**") shall be presented to the Court for approval on the date and time set by this Court for the final hearing to approve the Sale.  If the Court approves the Successful Bid, the Successful Bidder shall become the "**Buyer**" and shall close on the Sale as provided herein. In the event there is no Qualified Bidder other than the District, the Co-Plan Proponents shall seek immediate entry of the Final Sale Order approving the Stalking Horse Bid as the Successful Bid and the District or its designee as the Successful Bidder.

(f)     **Right to Be Heard**.  The Debtors and any and all creditors, interest holders, the United States Trustee and other parties in interest, including specifically, but not limited to, the Co-Plan Proponents, may be heard as to any and all issues regarding the Sale; provided, however, that a party that is merely a Qualified Bidder is not such a party in interest.

(g)     **Overbid Fee**. There shall be no Overbid Fee.

(h)     **Bankruptcy Court Approval**.   The Sale contemplated herein shall be subject to the entry of a Final Sale Order.

(i)     **Forfeit of Deposit**.  If any Buyer fails to close the purchase in accordance with the terms hereof, it will forfeit its Deposit and the Property will be sold

to the Back-Up Bidder as described above. The Buyer's forfeited Deposit shall be distributed in accordance with the Sale Motion.

(j)     **No Representations**. The Property shall be purchased on an "as is, where is" basis, with no representations or warranties (express or implied) of any kind or nature whatsoever, other than the representations and warranties contained in the PSA when finalized.

(k)     **Due Diligence**. Due diligence must be completed in full, without reservation, at least one (1) business day prior to the deadline to submit a Qualified Bid.

(l)     **Payment of Purchase Price**. The purchase price for the Real Property as finally approved by the Court at the Sale shall be payable in full at the Closing by wire transfer of immediately available funds; provided, however, that the District shall not be obligated to pay cash up to the Maximum Credit Bid. The Co-Plan Proponents shall pay any amounts owed as costs of Sale, including fees, costs and expenses of the Broker, as further set forth in the Sale Motion. The Buyer shall take title to the Property at Closing subject to outstanding real estate taxes, O&M Assessments, and other items set forth in the PSA.

(m)     **Closing**. The Sale and transfer of title to the Successful Bidder shall be consummated at the offices of Stichter Riedel Blain & Prosser, P.A. during normal business hours no later than five (5) business days after the entry of the Final Sale Order (provided that the Confirmation Order has been entered, unless such requirement is waived in writing by the Successful Bidder) (the "**Closing**"). On request of the Successful Bidder, the Debtors may extend the Closing; provided, however, that the Closing shall not be extended beyond September 3, 2014. The proceeds from the Sale (if the District is not the Successful Bidder) shall be disbursed at Closing, as further set forth in the Sale Motion.

Dated: April 9, 2014

/s/ Edward J. Peterson
Harley E. Riedel (FBN 183628)
Edward J. Peterson, III (FBN 0014612)
Stichter Riedel Blain & Prosser, P.A.
110 East Madison Street, Suite 200
Tampa, Florida  33602
(813) 229-0144 – Phone
(813) 229-1811 – Fax
hriedel@srbp.com
epeterson@srbp.com
Attorneys for Debtors